In some ways in the prior opinion, you have an Ameline remand, which is a limited remand, limited, limited, limited. That's what Ameline said. Actually, Your Honor, if I may correct it, this was not an Ameline remand. This was a summary reversal that was issued immediately – well, not immediately. I believe – I can't recall the precise date. It's in the record. But it was issued after Booker and after Ameline – after Ameline I, before the end bank in Ameline. I guess that would be Ameline II, actually. But in any event, this was actually a – it was a summary reversal and a remand for a full resentencing. So her – Was the – okay. Part of the problem is that nobody included this stuff in the early appeal in the excerpt here. Actually, the reversal is in there, Your Honor. Yes, yes, it is. But it was only on sentencing, right? Only on sentencing, right? That's right. That was the only issue. As I said, it was summarily reversed. There were no briefs in the earlier case. We don't know what was argued. We gather that issue was not raised. There were no briefs in the earlier case, Your Honor. It was reversed on a motion for summary reversal. But the knowing and intelligent waiver of the jury right wasn't raised at the remand. Is that – That's correct. Is that correct? You were talking about sentencing being a downward departure due to diminished mental capacity? That's right. That's largely what we were talking about. But the district court denied that, correct? Well, the district court found that diminished mental capacity wasn't proven by a preponderance, but the district court did impose a non-guideline sentence based in part on the fact that she did have low cognitive ability. And that's in the transcript of the resentencing. Does the government care whether you get this decided here or in a collateral attack? Well, Your Honor, there – The government said they would agree to have that heard immediately. Well, Your Honor, there's a couple things. First of all, there is in the – yes, I guess the short answer is yes, I do care, Your Honor. Mrs. Davis, first of all, is not entitled to appointed counsel on 2255. She has appointed counsel here on direct repeal. You'll volunteer, I'm sure. Well, depending on my current schedule, Your Honor, maybe. I can't actually say that I would be able to do that at this point. But be that as it may, there's a couple of things. First of all, there is evidence in the record now that clearly diminishes whatever confidence one might have had in the colloquy. There – while there's a dispute, and I know the government disagrees – Was this issue ever raised before the district court? The issue of the validity of the jury trial waiver? No, it was not. It's an issue for direct appeal. It wasn't – I mean, Your Honor, if I – procedurally what happened was Mrs. Davis was represented by a different attorney at trial. She had a bench trial. She – counsel never explored the issue of her – I'm sorry. You said this is an issue for direct appeal. Don't you have to raise the issue in the trial court? Especially since you went back, you could have said to the district court, look, we think that the original waiver – jury trial waiver was invalid, and now the district court can make a finding on that. How can we make a finding on – I mean, especially since you've now brought in subsequent evidence? Well, Your Honor – well, let me take that in parts. First of all, you're correct. I suppose I could have raised that issue before the judge on the remand for resentencing, but the remand was only for resentencing, not for reopening every single thing in the case. Okay. And so these – the evaluations that were done – If that is the case, then why isn't the issue lost? Because, Your Honor, she never – It wasn't raised in the first appeal at all. Well, there were no issues raised in the first appeal except for summary reversal for resentencing. Well, I understand you're agreeing with me and rephrasing it, but the fact of the matter is it could have been raised in the first appeal. It's exactly the kind of issue that normally is raised in an appeal. It wasn't raised. You're correct, Your Honor. It was not, although – Yes, it will do. Yes, it was not raised in the first appeal. You're correct. Why isn't that it? Why isn't – doesn't that – I mean, she had an opportunity to raise it, did not raise it. Why isn't the claim gone? Well, I think when you look at the history of the case, Your Honor, this was an unusual situation. Mrs. Davis had – She had counsel, right? She had counsel. It was me, and perhaps I was ineffective in that regard. But the situation was she was serving a short sentence. But she got an even shorter sentence. She got an even shorter sentence, and maybe if she'd been properly represented throughout the first time around, she wouldn't have had any sentence at all, but be that as it may. She had a short sentence that was running. She – based on the records that I obtained and that are in the records, she was not in good shape. And the – and I had the opportunity after Booker was decided – I mean, it was – I filed my motion for a summary reversal a few days after the Booker decision issued to get her to – I moved for summary reversal to get her resentencing, thinking that I – you know, obviously moving to – And that is the – that is what happened. It sounds to me like a strategic choice. It sounds to me like you're standing there and undermining your client's – any chance you might have at a challenge that you were ineffective. But it sounds to me like what you're telling us, you made a strategic choice to bypass the challenge of the – of the jury waiver policy for good and strategic reasons. So now you've managed to undermine it with this phenomenon. So what is left? Why isn't the issue simply gone? It was – the decision was made by competent counsel on a strategic basis not to raise the issue at a time that should have and could have been raised on direct appeal. It was never raised to the district court. There was no attempt to collaborate or attack the judge. Why isn't she – Well, Your Honor – Why isn't this issue gone? You're talking – for this appeal, you're saying. You're referring to this appeal only? Well, I can't really speak for future appeals. We'll tell you the answer to that later if you choose to bring it up. Well, one thing I would argue is certainly the government has conceded all along that the issue is still right for review and was not waived because of the limited nature of the earlier appeal. Beyond that, Your Honor, I'm afraid I've answered your question as best I can at this point. I do think that the change in the law following Booker, the uncertainty – It's not very good as far as I'm concerned. Sorry? It's not a very good answer as far as I'm concerned. I'm aware of that, Your Honor, and I apologize. So if we were looking back at the first – at the – during trial before the first limited appeal, if we were looking back at that, is your theory then that it was plain error for the district court to have allowed her to waive the jury trial, notwithstanding the detailed colloquy? Well, Your Honor, the – I suppose that's one way – I guess it would be, yes. I mean, the cases don't really talk about that, and it seems just from my review of the jury trial waiver cases that the question of the validity of a waiver has seemed to come up mostly in the absence of an objection and for the first time on appeal. Because usually, in fact, when there is a waiver of jury trial, the defendant is represented by the same attorney. The Christensen case is one, of course, where it was – it does not appear to have been reviewed for plain error, despite it being a post-Olano case. The language of plain error isn't used, and the – and the record shows that, you know, it appears – I mean, that is a different case, and I'm not arguing it's absolutely the same, because there was some evidence of mental dysfunction brought to the court before they – the judge took the jury trial waiver. I thought something about how well the district court had inquired into it or had gone into the colloquy, as I understand. The colloquy was limited, as opposed to this one, which was – That's true. There was a more limited colloquy, but really the point of Christensen was that there was no inquiry into the defendant's mental capacity. And in that case, of course, there was limited evidence that the judge knew that there had been some psychiatric evaluations. There was no evidence of that here at the time of the colloquy, was there? No, but, Your Honor, the – if you – No, no, period. It wasn't brought to the judge, but frankly, reading her colloquy and reading her answers and the transcript itself cast doubt into her mental capacity. What you said is there was evidence in the prior case that the judge knew she had treatment. That's in Christensen, yes. In Christensen. There is no evidence that the judge here at the time of the colloquy knew she had treatment. That's correct, Your Honor. Do you think, based on the transcript, the judge should have known that she had mental or physical problems? Yes, Your Honor, having – She said yes and no instead of giving any explanation? Well, if you read further, Your Honor, it's not just that she said yes and no. There were places at which she responded – she has a quite labile effect, and so there were places at which she responded, it don't matter because I didn't do nothing, and she repeats that a couple of times. I didn't do nothing. I don't know why I'm here. She didn't say, I don't know why I'm here. That comes up later. I think there are all defendants who waive a jury prior case. Myself, I had a case once as a district judge, and the guy kept wanting to insist. I said, you know, it's a bad idea. Don't do it. I always think they're guilty. Especially when they're not charged. Especially when they're not charged. So, you know, who knows why clients, in cooperation with their lawyers, choose – I mean, there are now statistics I saw in judicature, a real study, that show that judges actually tend to be more forgiving than juries in many criminal cases, and it's a pretty canny strategy to present a case to a judge. And now prosecutors are objecting to them more. Who was the judge in this case? It was Judge Timlin. Your Honor, I mean, it's not – the question isn't whether – it may have been right to waive a jury trial in any event. It's not really whether it's right. The question is whether she did it knowingly and intelligently. And that's what the record leaves a lot of doubt about. All right. You want to say something, perhaps? I'm already over, Your Honor. But, yeah, I'd appreciate any time you give me. Thank you. We'll take it out of your next case. Good morning, Your Honors. May it please the Court. Sherry Pim for the United States. To start with the point that there's been a lot of discussion about was the first remand in this case, or the remand in this case. As Defense Counsel notes, it was an unusual remand. The whole procedural history of this case following the trial or following the sentencing was unusual. And at the time the remand occurred, there wasn't a full briefing of the appeal. And Defense Counsel is right that that's something the government has agreed all along. Instead, Defense Counsel chose to file some motions with the Court. And so this Court sent it back for remand on the resentencing issue under Booker and an earlier version of Ameline. But in addition, the Court noted, because these issues had been raised in the briefs filed with this Court and the motions by the defense, that to the extent issues of appellant's competency to proceed have been raised, the district court may evaluate appellant's competency on remand. So this was the issue of competency had generally been raised in the first brief to this court. It was remanded. And so there was a fairly, in that sense, a broader than normal remand. It wasn't the typical Booker-Ameline remand. So at that time, the defense did have the opportunity to raise these issues, and that's, of course, how we ended up having the defense retain a psychologist, the government retain a psychiatrist. Both evaluated the defendant, and those papers, the declarations were submitted. For purposes of sentencing. Yes. Well, yes, but there was a ‑‑ I agree that it was for purposes of the resentencing, but there was a fair amount of breadth given, and the defense ‑‑ Was anything said to the district judge that, gee, we now think that in light of this new evidence, the court ought to go back and reconsider the validity of the jury waiver? No, Your Honor, and that is my point, that there was nothing raised with the district court at that time. So not only did the district court have no opportunity at the time the defendant waived her right to jury trial to assess this evidence that the defense now relies on, the district court has never been given the opportunity to evaluate this question of whether the defendant's waiver of jury trial was knowing, intelligent, and voluntary in light of this after acquired evidence that was presented at the time of resentencing. And so if one goes back, though, and looks at what the district court did do at the time that the defendant waived her jury trial, the district court did, the government submits, virtually everything right. There's no dispute that Rule 23 was complied with. There's no dispute that really there was nothing before the court at that time to even require a colloquy, because this court has held that none is required. And yet the district court did conduct, as recommended, a very full and thorough colloquy, repeatedly advising the defendant of exactly what it was she was giving up, that she was giving up the right to have 12 jurors decide. None of that matters, of course, if she's not. Well, but even... I mean, you can sit there and explain to her all day long what she's giving up, but if, you know, she's mentally incompetent, she's mentally incompetent. It doesn't help. That's true, Your Honor, but first of all, I don't think the defense is even arguing that she's fully incompetent. The defense, I believe, is just asserting that the record raises some question about the waiver was knowing, intelligent, and voluntary. And the government submits that the record really doesn't give any indication that she's nuts, that she's fully incompetent. Certainly, both sides conceded at the time... Well, no, this is not really a term of art. I appreciate that, Your Honor. It has sort of a broad range of meaning, everything from slightly eccentric to psychotic. And, you know, I think what they're saying is she's mentally impaired. And she had sort of an impairment that was sufficiently severe to interfere with her ability to appreciate or understand and appreciate what she was giving up. Well, there were... That's the claim. I don't know. I'd feel a lot better if the district judge had a chance to consider it, I would feel. Certainly, it would have been preferable if all of this evidence were before the district court at the time. The district court conducted it. Was this issue about the validity of the jury waiver, was this something discussed among counsel, but sort of not raised to the court? Is this completely new? This is completely new, Your Honor. I was trial counsel on the case at the time. The district court, in fact, asked the defense counsel, did he concur in this? Did he believe his client was knowingly, intelligently, and voluntarily giving up her right to jury trial? And he said he did. As of that point in time, and before the judge convicted her, everybody was happy. Now, once there's a conviction, there's often bias remorse. Because then you say, oh, I could have done much better with the jury. So nobody would have any reason to raise the issue until after that point. But I'm just wondering, this case comes up here, it gets kicked back on this summary procedure, but you say something's been acquiesced in. Were you aware that this issue about the validity of the jury waiver was lurking there? No, I was not aware of that. In part because while the defendant may have had remorse about various things in this case, there was never any indication as far as I'm aware that she had remorse about deciding that Judge Timlin should decide her case. I have recollections of indications generally. They're vague indications, so I can't point to anything. But that she always – well, she certainly indicated she liked Judge Timlin better than she liked me. Let me put it that way. But she – It's not exactly surprising. You're trying to put her away. It's not surprising. But certainly my impression was that the defendant always indicated she had a very fair hearing before Judge Timlin. And I think the record reflects why that would be the case. Judge Timlin is an exceedingly careful and conscientious judge. The colloquy he conducted with her indicates that. He seemed essentially to be trying to talk her out of waiving her right to jury trial. And she said to him, I chose you. That was the choice that she very clearly made. But at the proceeding, it was understood that following that proceeding she would be able to appeal her conviction. That was understood. And you stated that, as a matter of fact, and directed that she could now file a notice to appeal some of her convictions. What was it that she was going to appeal about her convictions? That I didn't know. It was more of a matter of generally preserving the right. But in this case, well, what is before the court at this time, the government would submit, provides really no basis to reverse the conviction. The court — Now you're talking about the merits. I'm sorry? The merits. Well, to reverse it as a result of the jury waiver. Is there any disadvantage to the client other than the possibility that Ms. Landau will do what we would expect and continue to represent her client? Is there any other disadvantage to go into habeas? Not to my knowledge, Your Honor. As the government pointed out, that is the more typical way that these issues that are really outside the record. Here it's outside the record at the time of the waiver would be brought. And really the government submits that the district court should be given the first opportunity here if there is going to be a finding on this issue to make that finding. Because he was not given that opportunity before. But based on the record that is before the court now, the government submits — Would it be procedurally possible to remand now to allow him to have that opportunity? I think in light of the fact that this has been raised on this appeal, then I think it would be procedurally possible to do a limited remand to allow him to weigh in on that issue. And does it matter to the government whether it would be a limited remand or whether it would be done through habeas? No, Your Honor. Either way, I think the issue needs to be first presented if it's going to be to the district court judge. Do you not have any objection to a remand? No, Your Honor. I mean, obviously, the government believes that the record as a whole doesn't support their contention. Well, based on the merits, you would prevail. Yes. But you do think the district judge should consider it first. If anyone is to consider this issue, then yes, absolutely, the district judge should consider it first. So the appropriate thing would be a remand. I think a limited remand could be appropriate in this case, yes. Thank you. Well, with that, unless there are further questions. Thank you. Thank you. I just have two points, Your Honor. I think you've got your paycheck. I don't know. Well, Your Honor, I don't know that I would be appointed to do this on remand. But anyway, that's another point. Your Honor, Judge Reinhardt, you asked if there was a dis- The point is you wouldn't feel obligated to be appointed. You'd do it for nothing. The head is going to throw a ring to it. Well, thank you, Your Honor, for your concern. Judge Reinhardt asked if there was a disadvantage. You're one of our graduates. Judge Reinhardt asked if there was a disadvantage to doing this on habeas as opposed to doing it on remand. There is one important disadvantage. There is a forfeiture in this case of the property that Mrs. Davis owned. Once the conviction becomes final on appeal, that property which has been forfeited will be transferred. So there is a significant difference. The government refrains from transferring real property. So you are voting for the remand? Actually, Your Honor, no. I think that that's not the appropriate remedy under Christensen. Christensen states that the remedy, and actually there's, I may be mis-citing, but there is a case, a Ninth Circuit case, I can't remember the name off the top of my head, where the government urged that very remedy and the court rejected it and vacated, just said, well, the waiver's not good enough, and the remedy is a remand for a new trial. And that is the, that is- I mean, we'd have to decide the merits to do that. Yes. I mean, we could also give you an award. We could do all kinds of things that would be better, but a remand would be pretty good. You're correct, Your Honor. A remand would be pretty good. There's something very nice about the argument of both counsel in this case. Will that help? Well, compliments are always welcome, Your Honor. Although I don't know that I'm deserving of one today. And I'm not fishing. Well, both counsel did a fair, fine job here. Thank you, Ms. Landau. Thank you, Your Honor. Thank you both very much. The case just argued will be submitted. The final case of the morning is United States v. Martinez-Cortez.
judges: Reinhardt, Kozinski, Ikuta